# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 8861 | **DATE** | 7/25/2000 |
| **CASE TITLE** | RUTH FIGUEROA vs. CITY OF CHICAGO, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The City's renewed Rule 50 motion for judgment as a matter of law [316-1] is denied. Figueroa's motion for equitable relief against the City [325-1] is denied. The City's motion to reduce Figueroa's award of damages [314-1] is granted. The $584,250 verdict against the City and in favor of Figueroa is reduced to $300,000. Figueroa's motion for back pay damages [319-1] is denied. Figueroa's motion to alter or amend the judgment against defendant Rudy Urian [321-1] is denied. ENTER MEMORANDUM OPINION AND ORDER.  *Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 27 2000 date docketed | 355 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 7/25/2000 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| WS | courtroom deputy's initials | | jad mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUTH FIGUEROA, | ) | |
| | ) | |
| Plaintiff, | ) No. 97 C 8861 | |
| | ) | |
| v. | ) Suzanne B. Conlon, Judge | |
| | ) | |
| CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED JUL 27 2000**

## MEMORANDUM OPINION AND ORDER

Ruth Figueroa ("Figueroa") sued the City of Chicago ("City") under Title VII for hostile work environment sexual harassment and Rudy Urian ("Urian") under 42 U.S.C. § 1983 for sexual harassment in violation of the equal protection clause and for intentional infliction of emotional distress. Following trial, the jury entered a verdict in favor of Figueroa on her Title VII claim against the City in the amount of $584,250. The jury also entered a verdict in favor of Figueroa on her sexual harassment claim against Urian in the amount of $30,750. However, the jury found against Figueroa on her intentional infliction of emotional distress claim against Urian.

The parties now submit various post-trial motions. The City moves for judgment as matter of law pursuant to Fed. R. Civ. P. 50, and to reduce the amount of Figueroa's award. Figueroa moves for an award of equitable relief against the City and for an award of back pay damages. Figueroa also moves to alter or amend the judgment against Urian pursuant to Fed. R. Civ. P. 59(e).

355

## DISCUSSION

### I. CITY'S MOTION FOR JUDGMENT AS A MATTER OF LAW

The City moves for judgment as a matter of law on Figueroa's Title VII sexual harassment claim pursuant to Fed. R. Civ. P. 50(b). Judgment as a matter of law under Rule 50 is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1); Cefalu v. Village of Elk Grove, 211 F.3d 416, 422 (7th Cir. 2000). Judgment as a matter of law is inappropriate when "'the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed.'" Mathur v. Board of Trustees of Southern Illinois University, 207 F.3d 938, 941 (7th Cir. 2000) (quoting Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 629 (7th Cir. 1996)). In reviewing a motion for judgment as a matter of law, the court must refrain from substituting its view of the contested evidence for that of the jury. Mathur, 207 F.3d at 941.

To prevail on her Title VII claim against the City, Figueroa had to prove by a preponderance of the evidence that: (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile or offensive working environment that affected seriously her psychological well-being; (4) the City knew or should have known about the harassment; (5) and that the City failed to take reasonable steps to discover and rectify the harassment. Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027, 1032 (7th Cir. 1998); McKenzie v. Illinois Department of Transportation, 92 F.3d 473, 480 (7th Cir. 1996). "[W]hether an environment is

'hostile' or 'abusive' can be determined only by looking at all the circumstances." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

The City first argues Figueroa failed to establish sufficient evidence to support a reasonable inference that her environment was objectively hostile. See Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1143 (7th Cir. 1997) (harassment must "adversely affect the work performance and the well-being of both a reasonable person and the particular person bringing the action"). Viewing the evidence in the light most favorable to Figueroa, the court disagrees. Figueroa's harassment claim against the City focused primarily on her exposure to sexually explicit graffiti directed toward her between mid-1996 and May 1997 while working in the garage of the City's Department of Fleet Management ("Fleet"). Figueroa introduced evidence that she saw one or two instances of the graffiti on the women's washroom door, and at least 10 to 15 instances in the men's washroom. At least two instances of the graffiti in mid-May 1997 were undisputably sexual in nature and explicitly referred to or depicted Figueroa's body parts or her engagement in sexual acts. Other employees would tell Figueroa of the graffiti by notifying her she "made it on the wall." Tr. Vol. I at 1031. The City argues most of the graffiti appeared in the men's washroom, and was therefore not intended to be viewed by Figueroa. However, Figueroa entered the washroom to view the graffiti numerous times. Therefore, the graffiti contributed to a hostile work environment.

The City argues the graffiti was sporadic over many months, and was not severe or pervasive. However, disputed issues of fact existed as to how many times the graffiti appeared and whether or not each instance was sexual in nature. Moreover, Figueroa offered other evidence of sexual harassment. She introduced evidence that Noel Murtagh, a coworker, referred to Figueroa as a "fucking princess" -- a reference the jury was free to find was directed toward Figueroa's sex -- at

3

least three times, and made derogatory comments in Figueroa's presence about women in the workplace. Another coworker asked Figueroa whether she had been sexually harassed lately, and if not, offered to harass her. Yet another employee suggestively ate an ice cream cone in front of Figueroa while moaning to her in a sexual manner. Figueroa also saw a group of coworkers viewing a pornographic magazine.

In evaluating this evidence, the jury was entitled to consider that Figueroa was only one of two women in the garage at Fleet, and the only female supervisor. See Carr v. Allison Gas Turbine Div., General Motors Corp., 32 F.3d, 1007, 1010 (7th Cir. 1994) ("The asymmetry of positions must be considered. She was one woman; they were many men"). The jury was entitled to find these events, combined with the graffiti, created an objectively hostile atmosphere. See Wilson v. Chrysler Corp., 172 F.3d 500, 511 (7th Cir. 1999) ("[t]he multifaceted nature of the harassment, its frequent and at times routine character, and the participation of so many members of the workforce" suggest an environment was objectively hostile); Dey v. Colt Construction and Development Co., 28 F.3d 1446, 1456 (7th Cir. 1994) ("relatively isolated instances of non-severe misconduct will not support a hostile environment claim ... [y]et a series of such statements, if sufficiently severe and pervasive, could give rise to an objectively hostile work environment"). The trial involved nearly two weeks of highly contested testimony. The jury weighed the credibility of the witnesses and determined the extensiveness and nature of the sexual harassment suffered by Figueroa. The court may not substitute its views of the evidence for those of the jury. Considering the evidence and resolving all credibility issues in the light most favorable to Figueroa, the jury's finding that Figueroa was subjected to a sexually hostile work environment was supported by sufficient evidence to sustain the verdict.

The City next argues that Figueroa failed to introduce evidence sufficient to support a finding that the City knew or should have known of the abusive work environment prior to May 1997. The City argues that after Figueroa filed a sexual harassment complaint with the City's sexual harassment office in May 1997, it had notice of the harassment and took reasonable steps to remedy the problem. But the City asserts it cannot be held liable for harassment occurring prior to May 1997 because it had no notice. Notice or knowledge of the plaintiff's harassment by a coemployee is a prerequisite to an employer's liability under Title VII. Parkins v. Civil Constructors of Illinois, 163 F.3d 1027, 1035 (7th Cir. 1998). A plaintiff must show "'she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed'". Id. (quoting Zimmerman v. Cook County Sheriff's Dept., 96 F.3d 1017, 1019 (7th Cir. 1996)). Where an employer establishes a designated channel for complaint of harassment, the court first looks to whether the plaintiff utilized this channel; "'complainants can be expected to utilize it in the normal case.'" Id. (quoting Young v. Bayer Corp., 123 F.3d 672, 674 (7th Cir. 1997)).

The City's sexual harassment policy provides that employees may lodge complaints of sexual harassment with the City's sexual harassment office *or* with a supervisor; supervisors are then required to refer the complaint to the sexual harassment office. While the City concedes Figueroa told several supervisors about the graffiti, it contends she failed to provide them with sufficient information to enable them to conclude she was probably being harassed. Specifically, the City asserts Figueroa did not complain of the graffiti as being sexual in nature. There was testimony that Figueroa told several supervisors about the graffiti and that the graffiti referred to her body parts. She told two supervisors the graffiti referred to her "tits." Moreover, the jury was free to infer that a reasonable supervisor, upon receiving repeated complaints of graffiti in the men's room from a female employee, would ask

5

the employee about the nature of the graffiti or would view the graffiti first-hand; the explicit sexual nature of the graffiti is readily apparent by simply viewing the graffiti. The jury could reasonably infer from this evidence that Figueroa gave supervisors sufficient notice of the graffiti to alert them to a possibility of harassment.

There was evidence to support a finding that the City failed to remedy the harassment prior to May 1997. Figueroa testified that other employees – not mangers or supervisors – would often remove the graffiti within a day or two after it appeared. Despite these efforts, the graffiti would reappear. It is true that the law does not require an employer's response to succeed in preventing further harassment, "but merely that its response was reasonably likely to prevent future harassment." Parkins, 163 F.3d at 1036. However, the City points to no official action taken in response to the graffiti. Testimony that the graffiti recurred for roughly a year supports an inference that any response taken by the City was inadequate.

Finally, the City argues it was unreasonable for Figueroa to continue complaining of the graffiti to supervisors if it became apparent to her that the supervisors were not taking adequate steps to stop the graffiti. The City asserts Figueroa should have realized that the complaints to supervisors were ineffective and should have reported the graffiti to the City's sexual harassment office. The City submits Figueroa then unreasonably delayed in doing so until May 1997. An employee cannot unreasonably delay in pursing alternative measures to remedy harassment when she should have realized that the means initially chosen to complain were ineffective. Parkins, 163 F.3d at 1038. However, there was some evidence that Figueroa reported the graffiti to several supervisors during the course of a year. This supports a reasonable inference that Figueroa was not engaging in "unreasonable foot-dragging," Savino v. C.P. Hall Co., 199 F.3d 925, 935 (7th Cir. 1999), but rather

pursued alternative means of complaint. The reasonableness of Figueroa's decision to wait until May 1997 to complain of the harassment to the sexual harassment office was a matter for the jury.

In sum, the jury was entitled to weigh the conflicting evidence, evaluate the credibility of the witnesses, and determine whether that evidence supported Figueroa's claim. The court cannot conclude the verdict lacks support in the evidence. Accordingly, the City's motion for judgment as a matter of law must be denied.

## II. FIGUEROA'S MOTION FOR EQUITABLE RELIEF

In addition to her award of damages, Figueroa requests the court (or a special master) to order substantive and structural changes in the City's sexual harassment policy and its sexual harassment office. The encyclopedic list of far-reaching changes sought by Figueroa includes (among other things): (1) substantively amending the policy to include a list of conduct constituting sexual harassment, precise penalties for harassment, a time frame in which complaints of harassment must be investigated, a grant of power to the sexual harassment office enabling it to discipline violations directly (as opposed to recommending discipline to department heads), and an enumeration of the power and role of departmental supervisors; (2) amending the materials used to instruct employees about the policy; (3) requiring mandatory training sessions on the policy; (4) increasing the staff and budget of the sexual harassment office; and (5) increasing the training of the office's employees.

District courts have broad discretion in determining whether injunctive relief is appropriate to remedy violations of Title VII. EEOC v. Ilona of Hungary, Inc., 108 F.3d 1569, 1578 (7th Cir. 1997); EEOC v. Gurney Inn Corp., 914 F.2d 815, 817 (7th Cir. 1990). A key consideration in awarding injunctive relief is "whether the discriminatory conduct could possibly persist in the future." Ilona of Hungary, 108 F.3d at 1578-79. The court declines to award the far-ranging injunctive relief sought

by Figueroa because the record does not sufficiently demonstrate sexual harassment of Fleet employees could persist in the future. Figueroa supports many of her proposals by reference to events or conditions occurring prior to the Fall of 1999. For instance, she notes that prior to Fall 1999, attendance at training classes was largely voluntary, and the policy was not read by many employees. Despite Figueroa's assertion that the policy was inadequately distributed and that employees were not trained in the policy during the period of her harassment in 1996 and 1997, all Fleet employees have now received the policy and have been trained in the policy since the Fall of 1999. The policy enumerates a number of activities that may constitute sexual harassment, and new employees receive the policy and training during orientation. The court has no basis for finding these mandatory programs to be deficient in preventing sexual harassment.

Moreover, evidence showed that departmental supervisors have never declined to implement discipline recommended by the sexual harassment office, and have even increased the recommended discipline in a few instances. The City suspended several employees following Figueroa's complaint to the sexual harassment office. Finally, given Figueroa's substantial verdict against the City and the publicity the verdict generated in the local media, the City will likely ensure sexual harassment is adequately addressed in the workplace without the court micro-managing every facet of the City's sexual harassment policy, its efforts to administer the policy, and enforcement of the policy by its sexual harassment office. See Ward v. Tipton County Sheriff Dept., 937 F. Supp. 791, 800 (S.D. Ind. 1996). On this record, the court is unconvinced that the City's current mechanisms for combating sexual harassment fail to adequately prevent sexual harassment as to warrant the far-reaching

injunctive intrusion sought by Figueroa. Accordingly, Figueroa's motion for equitable relief must be denied.[1]

## III. CITY'S MOTION TO REDUCE FIGUEROA'S AWARD / FIGUEROA'S MOTION FOR BACK PAY DAMAGES

The City requests the court to reduce the jury's $584,250 verdict to $300,000 as required by 42 U.S.C. § 1981a's statutory cap on compensatory damages in Title VII cases. This reduction is mandated by the statutory cap. See 42 U.S.C. § 1981a(b)(3)(D). Figueroa does not object to application of § 1981a, but claims she is entitled to $33,748 in equitable back pay damages and that the jury did not include back pay damages in its $584,250 award. Figueroa concludes she is entitled to $333,748 in damages against the City ($300,000 in capped compensatory damages + $33,748 in equitable back pay damages).

In the normal course, an award of compensatory damages for a Title VII violation does not include back pay damages. See 42 U.S.C. § 1981a(b)(2). However, the jury in this case was free to include back pay damages in its award of compensatory damages. Verdict forms originally proposed by the City contained separate lines for lost wages and for physical and emotional distress damages on Figueroa's Title VII against the City. These separate lines allowed the jury to precisely apportion and distinguish back pay damages from physical and emotional distress damages. However, at the jury instruction conference, Figueroa's counsel stated he preferred the verdict form to contain only a single

---

[1] This conclusion is not inconsistent with the jury's finding that the City unreasonably failed to address Figueroa's complaints to supervisors prior to May 1997. The verdict – that Figueroa was sexually harassed in the past – is not without support in the record; however, Figueroa fails to adequately and properly document conditions from which the court could conclude that injunctive relief is necessary -- that future violations could occur. Figueroa cites to no trial evidence supporting her request for relief.

9

entry for "compensatory damages" on Figueroa's Title VII claim, and the court followed counsel's request. Tr. Vol. I at 2056. Thus, Figueroa waived a claim of ambiguity in the verdict form. See Cefalu v. Village of Elk Grove, 211 F.3d 416, 426 (7th Cir. 2000). Moreover, Figueroa introduced evidence at trial concerning her lost wages and asked the jury to consider them in assessing her damages. Nor did she request a limiting instruction delineating back pay from other compensatory damages.

Under these circumstances, the court will not speculate whether the jury awarded back pay damages as part of the verdict, and if so, their amount. It is possible the jury decided no back pay damages should be awarded. Collins v. D.J. Kibort, 143 F.3d 331, 340 (7th Cir. 1998) (because the jury "could have awarded [plaintiff] back pay as part of its award of compensatory damages . . . the court could not separately award back pay without improperly speculating on the jury's basis for awarding damages"). In any event, even if the court was confident that the jury's verdict did not include back pay damages and that no double recovery would occur by awarding Figueroa back pay damages, Figueroa's factual submissions on back pay damages are vague and unsupported by citation to the record. The result would be unreliable back pay damages calculations. An award of back pay damages need not be exact, but the court will not speculate on the amount when Figueroa fails to properly support her contentions. Accordingly, the jury's verdict against the City is reduced to $300,000 pursuant to 42 U.S.C. § 1981a.

## IV. FIGUEROA'S MOTION TO ALTER OR AMEND THE JUDGMENT AGAINST URIAN

Finally, Figueroa moves to increase the jury's award of compensatory damages against Urian pursuant to Fed. R. Civ. P. 59(e). To prevail on a Rule 59(e) motion, the moving party must clearly

establish a manifest error of law or fact, an intervening change in the controlling law, or present newly discovered evidence. Cosgrove v. Bartolotta, 150 F.3d 729, 732 (7th Cir. 1998); LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir.1995). Figueroa contends the damage award of $30,750 against Urian is too low, and that the low award must have resulted from jury confusion as to what conduct it could consider in determining Urian's liability. Figueroa claims she suffered $50,700 in medical expenses and $33,748 in lost pay resulting from Urian's conduct. Figueroa also seeks an additional $250,000 in compensatory damages.

Figueroa fails to establish the jury instructions caused confusion. Figueroa first asserts the jury may have mistakenly believed her § 1983 sexual harassment claim against Urian was based solely on his sexual advances, comments, and touchings. Figueroa argues this was due to an instruction stating that there was no retaliation claim in the case. Figueroa speculates the jury did not consider evidence of Urian's failure to promptly address her complaints to him of the sexual graffiti and evidence of his threats to and interrogation of Figueroa after she complained of the graffiti to the City's sexual harassment office.[2] Figueroa also asserts that an instruction concerning her intentional infliction of emotional distress claim against Urian may have caused the jury to believe that this evidence could only be considered as part of the emotional distress claim, and not her § 1983 claim.

Even assuming that Urian's threats after Figueroa complained to the sexual harassment office and his failure to address the graffiti constituted harassment based on sex, the court declines to

---

[2] The instruction on retaliation instructed the jury not to consider evidence of retaliation when evaluating Figueroa's Title VII sexual harassment claim against *the City*. It did not instruct the jury not to consider evidence of retaliation in evaluating her claims against Urian. In fact, during the instruction conference, the court sustained Figueroa's objection to an instruction proposed by Urian that would have instructed the jury not to consider evidence of retaliation in evaluating the claims against Urian. Tr. Vol. 1 at 2022.

11

speculate on the jury's reasoning. Figueroa's brief is based on conjecture, not on evidence; she does not even identify the purportedly vague instructions or the particular language believed to cause confusion, much less argue why the language was confusing. Figueroa's conclusory motion fails to meet the rigorous standards of Rule 59(e). Accordingly, the court cannot revisit the jury's verdict against Urian, and Figueroa's motion must be denied.

## CONCLUSION

The City's renewed Rule 50 motion for judgment as a matter of law is denied. Figueroa's motion for equitable relief against the City is denied. The City's motion to reduce Figueroa's award of damages is granted. The $584,250 verdict against the City and in favor of Figueroa is reduced to $300,000. Figueroa's motion for back pay damages is denied. Figueroa's motion to alter or amend the judgment against defendant Rudy Urian is denied.

ENTER:

*[signature]*

Suzanne B. Conlon
United States District Judge

July 25, 2000